# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:04-cv-00019-W

| | |
|---|---|
| GEORGE A. O'BAR and JACOB A. PEARCE, <br><br> Plaintiffs, <br><br> vs. <br><br> LOWE'S HOME CENTERS, INC., <br><br> Defendant. | ORDER |

THIS MATTER is before the Court on several briefs in response to the Court's Order of January 3, 2007, regarding the issue of Plaintiffs' standing to represent a class, including Defendant's Memorandum Regarding Plaintiffs' Standing to Represent a Class (Doc. No. 99), filed January 12, 2007; Plaintiff's Memorandum Regarding their Standing to Represent Classes (Doc. No. 100), filed January 12, 2007; Defendant's Response in Opposition to Plaintiff's Memorandum (Doc. No. 101), filed January 19, 2007; and Plaintiff's Response to Defendant's Memorandum Regarding Standing (Doc. No. 102), filed January 19, 2007.

Also before the Court, *sua sponte*, is the issue of a precertification discovery plan. For the following reasons, the Court DIRECTS the parties to submit a precertification discovery plan as set forth herein.

## STANDING

In response to the Court's oral Order of December 22, 2006, and its subsequent written Order of January 3, 2007, the parties submitted briefs addressing the issue of whether and to what extent Plaintiffs have standing to represent a class. As an initial matter, the Court notes that significant

portions of Plaintiffs' and Defendant's briefs on this issue address considerations of class certification under Rule 23 of the Federal Rules of Civil Procedure. As the issue of Rule 23 class certification is not ripe, the Court will disregard any argument regarding the merits of class certification.

The issue of standing is significant to preparation of a precertification discovery plan because potential members of the class will consist only of those unnamed persons for whom Plaintiffs have standing to represent. Accordingly, as discussed in the following section, discovery will be limited based on Plaintiffs' ability to represent a potential class.

Plaintiffs argue that, procedurally, this issue is not timely.[1] Plaintiffs contend the standing issue is more appropriately considered following precertification discovery and as part of a Rule 23 class certification analysis. Although many of the same issues and arguments may be raised in the context of a Rule 23 motion and/or hearing, it is appropriate to consider the standing issue at this juncture.

It is well-settled that in order for plaintiffs to have standing, plaintiffs must establish three elements: (1) injury-in-fact; (2) traceability; and (3) redressability. Lujan v. Defenders of Wildlife,

---

[1] Additionally, Plaintiffs suggest the Court improperly considered the merits of Plaintiffs' case by ruling on Defendant's Motion for Summary Judgment prior to allowing precertification discovery and before certifying the class. Contrary to Plaintiffs' assertion, it is entirely appropriate for the Court to rule on Rule 56 motions or other threshold issues before deciding certification. See Manual for Complex Litigation, Fourth, § 21.133 (2004) (citing Wright v. Schock, 742 F.2d 541, 544 (9th Cir. 1984); Schwarzchild v. Tse, 69 F.3d 293, 297 (9th Cir. 1995); Cowen v. Bank United of Tex., 70 F.3d 937, 941(7th Cir. 1995)). Indeed, "[m]ost courts agree, and Rule 23(c)(1)(A) reflects, that such precertification rulings on threshold dispositive motions are proper, and one study found a substantial rate of precertification rulings on motions to dismiss or for summary judgment." Manual for Complex Litigation, Fourth, § 21.133 (citing Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules 29–32 (Federal Judicial Center 1996)). Precertification rulings bind only the named parties and, therefore, promote judicial efficiency and economy by limiting the "use of the class action process for cases that are weak on the merits." Manual for Complex Litigation, Fourth, § 21.133. Accordingly, early rulings on dispositive motions can minimize any unfair prejudice to the unnamed parties. Thus, the Court's ruling on Defendant's summary judgment motion prior to consideration of class certification was not premature.

504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir.2000). As stated in Dash v. FirstPlus Home Loan Owner Trust 1996-2, 248 F.Supp.2d 489, 503 (M.D.N.C. 2003):

> Indeed, Plaintiffs' characterization of their suit as a putative class action in no way cures this defect. See Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 1925 n. 20, 48 L.Ed.2d 450 (1976) ("That a suit may be a class action ... adds nothing to the question of standing ...."). Otherwise, any plaintiff could sue a defendant against whom the plaintiff has no claim in a putative class action, on the theory that some member of the hypothetical class, if a class were certified, might have a claim. Plaintiffs "may not use the procedural device of a class action to bootstrap [themselves] into standing [they] lack[ ]." Weiner v. Bank of King of Prussia, 358 F.Supp. 684, 694 (E.D.Pa.1973).

Furthermore, "it is essential that named class representatives demonstrate standing through a 'requisite case or controversy between themselves personally and [defendants],' not merely allege that 'injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.' " Dash, 248 F.Supp.2d at 503 (quoting Cent. Wesleyan Coll. v. W.R. Grace & Co., 6 F.3d 177, 188 (4th Cir.1993) (quoting Blum v. Yaretsky, 457 U.S. 991, 1001 n. 13, 102 S.Ct. 2777, 2784 n. 13, 73 L.Ed.2d 534 (1982) (citations omitted) (alteration in original))).

Plaintiffs' claims ultimately arise out of the Fairness Program, the EEO Action Plan, and other diversity programs during the relevant time period (collectively, "Fairness Programs") and their impact on Plaintiffs' promotion and compensation. Plaintiffs allege the Fairness Programs created a pattern and practice of discrimination that caused Plaintiffs' alleged injuries. Plaintiffs contend they suffered an injury in fact as a result of the programs, to wit: Defendant denied them promotions for which they were qualified because they were white males; Plaintiffs received unfair and unequal compensation as those in comparable positions because they were white males; and Defendant retaliated against Plaintiffs' once they raised concerns about the discriminatory practices.

Furthermore, these injuries are traceable to and, if proven true, were caused by Defendant's implementation of the programs. These injuries can be redressed by a decision on the merits in Plaintiffs' favor the remedies sought by Plaintiffs: an injunction and/or award of damages.

Accordingly, Plaintiffs have standing to present claims for promotion discrimination, compensation discrimination, and retaliation. As retaliation is an individual claim (and discrete act), Plaintiffs have standing to represent two separate, limited classes of: (1) white males who sought and were denied promotions, where the promotion or job position was awarded to a minority and/or female; and (2) white males who received lower compensation than minorities or females in comparable positions. The size and scope of these two classes, however, is more appropriate to define at the certification stage.

## PRECERTIFICATION DISCOVERY PLAN

As the foregoing issues have been resolved, the time for the parties to begin precertification discovery is ripe. To date, the Court has significantly limited Plaintiffs' ability to conduct discovery as to the claims of the potential class members. In fact, the Court allowed discovery only as to Plaintiffs' individual claims. Based on the Court's analysis of the standing issue, the Court finds it appropriate to allow broad discovery into the Rule 23(a) requirements, so as to allow the Court to have complete information in order to adequately address a Rule 23 certification motion. "Discovery must be directed to ascertaining whether a class exists, and must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification. At the same time, a defendant should be protected from discovery which is overly burdensome, irrelevant, or which invades a privileged area." 3 Emp. Discrim. Coord. Analysis of Federal Law § 133:31.

Plaintiffs contend they should be allowed "across the board" discovery on all employees, in all positions, and in all stores. Plaintiffs, however, have not provided an adequate showing that the Fairness Programs applied to *all* employees. Furthermore, without considering the merits of Plaintiffs' claims, it is difficult to conceive how the discrimination complained of by Plaintiffs could be similar to that of *all* employees and that Plaintiffs have standing to represent all employees. Instead, the Fairness Programs appear to target management positions. Accordingly, it is those positions where employees may have faced injury similar to that alleged by Plaintiffs.

Plaintiffs argue they were discriminated against because they were not minorities or females. Under the Fairness Programs, levels of employment were identified as "underutlized." As such, according to Plaintiffs, precertification discovery should be allowed as if all white, male employees and former employees are potential class members. Defendant, of course, disagrees with this contention. The Court, therefore, finds it necessary to resolve this dispute, giving Plaintiffs every reasonable inference. After reviewing the evidence before the Court and hearing argument from counsel as to the extent the Court should allow precertification discovery, the Court will limit precertification discovery to managers and officers at the regional, district, and national level. For example, this would include Senior Vice Presidents, Vice Presidents, Directors, Mid Managers, District Managers, and Store Managers. This does not include lower-level employees of Lowe's, such as in-store, non-managerial personnel. It is imperative to emphasize that although the Court is allowing somewhat expansive discovery, the limitations imposed herein are reasonable to ensure that discovery is broad enough for Plaintiffs' to make a Rule 23 certification, and, at the same time, reasonably restricted to only those areas where Plaintiffs may *potentially* be class representatives. As stated above, the Court reserves judgment as to the definition of class membership and the

identification of the class claims, issues or defenses until the appropriate time following a Rule 23 certification motion and opportunity for hearing. Furthermore, although the Court is extending some leniency in allowing precertification discovery, the Court is no way condoning or encouraging broad, unduly burdensome, or irrelevant discovery requests. The Court cautions Plaintiffs to be judicious in their discovery requests and to carefully consider the Court's earlier rulings before involving the Court in any disputes.

Pursuant to Rule 26(f), the parties are ordered to jointly prepare and submit to the Court a specific and detailed precertification discovery plan within twenty-one (21) calendar days from the date of this Order. Because the parties have already conducted discovery on the individual claims, the Plan should identify any further depositions and other discovery contemplated, as well as the subject matter to be covered and the reason it is material to determining the certification inquiry. The Court will allow precertification discovery for ninety (90) calendar days following the filing of the precertification discovery plan.

Based on the previous disputes between the parties, the Court anticipates an issue arising as to the discovery of data through various types of computer programs maintained by Defendant. In order to assist the parties in conducting discovery of electronically stored information ("ESI"), the following guidelines[2] will govern the parties. The purpose of these guidelines is to facilitate the just, speedy, and inexpensive conduct of discovery involving ESI in this case, and to promote, whenever possible, the resolution of disputes regarding the discovery of ESI without Court intervention.

---

[2] The guidelines set forth herein are adapted from the "Suggested Protocol for Discovery of Electronically Stored Information" as set forth by the United States District Court for the District of Maryland. The full document may be found at http://www.mdd.uscourts.gov/news/news/ESIProtocol.pdf.

While these guidelines are intended to provide the parties with a comprehensive framework to address and resolve a wide range of ESI issues, it is not intended to be an inflexible checklist. The Court expects the parties will consider the nature of the claims, the amount in controversy, agreements of the parties, the relative ability of the parties to conduct discovery of ESI, and such other factors as may be relevant under the circumstances. Therefore not all aspects of these guidelines may be applicable or practical for a particular matter. Furthermore, several of these issues have been briefed by the parties, which should help facilitate discovery and the responses to discovery requests related to ESI, as well as hopefully minimize disputes that may arise. The Court encourages the parties to resolve ESI issues informally and without Court supervision whenever possible. In this regard, compliance with these guidelines may be considered by the Court in resolving discovery disputes, including whether sanctions should be awarded pursuant to Fed.R.Civ.P. 37.

In preparing the precertification discovery plan, the parties should discuss:

A. The anticipated scope of requests for, and objections to, production of ESI, as well as the form of production of ESI and, specifically, but without limitation, whether

production will be of the Native File,[3] Static Image, or other searchable or non-searchable formats.

    (1)    If the parties are unable to reach agreement on the format for production, ESI should be produced to the Requesting Party as Static Images. When the Static Image is produced, the Producing Party should maintain a separate file as a Native File and, in that separate file, it should not modify the Native File in a manner that materially changes the file and the Meta-Data. After initial production in Static Images is complete, a party seeking production of Native File ESI should demonstrate particularized need for that production.

    (2)    The parties should discuss whether production of some or all ESI in paper format is agreeable in lieu of production in electronic format.

    (3)    When parties have agreed or the Court has ordered the parties to exchange all or some documents as electronic files in Native File format in connection with discovery, the parties should collect and

---

[3] The terms as used herein are defined as follows:
    A.    "Meta-Data" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Meta-Data is a subset of ESI.
    B.    "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed and/or modified. Native Files are a subset of ESI.
    C.    "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement of the parties or order of Court, a Static Image should be provided in either Tagged Image File Format (TIFF, or .TIF files) or Portable Document Format (PDF). If load files were created in the process of converting Native Files to Static Images, or if load files may be created without undue burden or cost, load files should be produced together with Static Images.

produce said relevant files in Native File formats in a manner that preserves the integrity of the files, including, but not limited to, the contents of the file, the Meta-Data (including System Meta-Data, Substantive Meta-Data, and Embedded Meta-Data[4]) related to the file, and the file's creation date and time. The general process to preserve the data integrity of a file may include one or more of the following procedures: (a) duplication of responsive files in the file system (*i.e.,* creating a forensic copy, including a bit image copy, of the file system or pertinent portion), (b) performing a routine copy of the files while preserving Meta-Data (including, but not limited to, creation date and time), and/or (c) using reasonable measures to

---

[4] The production of Meta-Data apart from its Native File may impose substantial costs, either in the extraction of such Meta-Data from the Native Files, or in its review for purposes of redacting non-discoverable information contained in such Meta-Data. The persons involved in the discovery process are expected to be cognizant of those costs in light of the various factors established in Fed.R.Civ.P. 26(b)(2)(C). The following principles should be utilized in determining whether Meta-Data may be discovered:

        A.        Meta-Data is part of ESI. Such Meta-Data, however, may not be relevant to the issues presented or, if relevant, not be reasonably subject to discovery given the Rule 26(b)(2)(C) cost-benefit factors. Therefore, it may be subject to cost-shifting under Fed.R.Civ.P. 26(b)(2)(C).

        B.        Meta-Data may generally be viewed as either System Meta-Data, Substantive Meta-Data, or Embedded Meta-Data. System Meta-Data is data that is automatically generated by a computer system. For example, System Meta-Data often includes information such as the author, date and time of creation, and the date a document was modified. Substantive Meta-Data is data that reflects the substantive changes made to the document by the user. For example, it may include the text of actual changes to a document. While no generalization is universally applicable, System Meta-Data is less likely to involve issues of work product and/or privilege.

        C.        Except as otherwise provided herein, Meta-Data, especially substantive Meta-Data, need not be routinely produced, except upon agreement of the requesting and producing litigants, or upon a showing of good cause in a motion filed by the Requesting Party in accordance with the procedures set forth in the Local Rules of this Court. Consideration should be given to the production of System Meta-Data and its production is encouraged in instances where it will not unnecessarily or unreasonably increase costs or burdens. As set forth above, upon agreement of the parties, the Court will consider entry of an order approving an agreement that a party may produce Meta-Data in Native Files upon the representation of the recipient that the recipient will neither access nor review such data. The guidelines stated herein do not address the substantive issue of the duty to preserve such Meta-Data, the authenticity of such Meta-Data, or its admissibility into evidence or use in the course of depositions or other discovery.

prevent a file from being, or indicate that a file has been, modified, either intentionally or unintentionally, since the collection or production date of the files. If any party desires to redact contents of a Native File for privilege, trade secret, or other purposes (including, but not limited to, Meta-Data), then the Producing Party should indicate that the file has been redacted, and an original, unmodified file should be retained at least during the pendency of the case.

    B.    Whether Meta-Data is requested for some or all ESI and, if so, the volume and costs of producing and reviewing said ESI.

    C.    Preservation of ESI during the pendency of the lawsuit, specifically, but without limitation, applicability of the "safe harbor" provision of Fed.R.Civ.P. 37, preservation of Meta-Data, preservation of deleted ESI, back up or archival ESI, ESI contained in dynamic systems[5], ESI destroyed or overwritten by the routine operation of systems, and, offsite and offline ESI (including ESI stored on home or personal computers). This discussion should include whether the parties can agree on methods of review of ESI by the responding party in a manner that does not unacceptably change Meta-Data.

        (1)    If Counsel are able to agree, the terms of an agreed-upon preservation order may be submitted to the Court;

---

[5] A "dynamic system" is a system that remains in use during the pendency of the litigation and in which ESI changes on a routine and regular basis, including the automatic deletion or overwriting of such ESI.

  (2) If Counsel are unable to agree, they should attempt to reach agreement on the manner in which each party should submit a narrowly tailored, proposed preservation order to the Court for its consideration.

D. Post-production assertion, and preservation or waiver of, the attorney-client privilege, work product doctrine, and/or other privileges in light of "clawback," "quick peek," or testing or sampling procedures, and submission of a proposed order. If Meta-Data is to be produced, Counsel may agree, and should discuss any agreement, that Meta-Data not be reviewed by the recipient and the terms of submission of a proposed order encompassing that agreement to the Court. Counsel should also discuss procedures under which ESI that contains privileged information or attorney work product should be immediately returned to the Producing Party if the ESI appears on its face to have been inadvertently produced or if there is prompt written notice of inadvertent production by the Producing Party. The Producing Party should maintain unaltered copies of all such returned materials under the control of Counsel of record. This provision is procedural and return of materials reason is without prejudice to any substantive right to assert, or oppose, waiver of any protection against disclosure.

E. Identification of ESI that is or is not reasonably accessible without undue burden or cost, specifically, and without limitation, the identity of such sources and the reasons for a contention that the ESI is or is not reasonably

accessible without undue burden or cost, the methods of storing and retrieving that ESI, and the anticipated costs and efforts involved in retrieving that ESI. The party asserting that ESI is not reasonably accessible without undue burden or cost should be prepared to discuss in reasonable detail the basis for such assertion.[6]

F. Because identifying information may not be placed on ESI as easily as bates-stamping paper documents, methods of identifying pages or segments of ESI produced in discovery should be discussed, and, specifically, and without limitation, the following alternatives may be considered by the parties: electronically paginating Native File ESI pursuant to a stipulated agreement that the alteration does not affect admissibility; renaming Native Files using bates-type numbering systems, *e.g.,* ABC0001, ABC0002, ABC0003, with some method of referring to unnumbered "pages" within each file; using software that produces "hash marks" or "hash values" for each Native File; placing pagination on Static Images; or any other practicable method. The parties are encouraged to discuss the use of a digital notary for producing Native Files.

G. The method and manner of redacting information from ESI if only part of the ESI is discoverable. As set forth herein, if Meta-Data is redacted from a file,

---

[6] No party should object to the discovery of ESI pursuant to Fed.R.Civ.P. 26(b)(2)(B) on the basis that it is not reasonably accessible because of undue burden or cost unless the objection has been stated with particularity, and not in conclusory or boilerplate language. Wherever the term "reasonably accessible" is used herein, the party asserting that ESI is not reasonably accessible should be prepared to specify facts that support its contention.

written notice of such redaction and the scope of that redaction should be provided.

H. The nature of information systems used by the party or person or entity served with a subpoena requesting ESI, including those systems described herein. Counsel should be prepared to list the types of information systems used by the client and the varying accessibility, if any, of each system. It may suggest that Counsel be prepared to identify the ESI custodians, for example, by name, title, and job responsibility. It also may suggest that, unless impracticable, Counsel be able to identify the software (including the version) used in the ordinary course of business to access the ESI, and the file formats of such ESI.

I. Specific facts related to the costs and burdens of preservation, retrieval, and use of ESI.

J. Cost sharing for the preservation, retrieval and/or production of ESI, including any discovery database, differentiating between ESI that is reasonably accessible and ESI that is not reasonably accessible; provided however that absent a contrary showing of good cause, *e.g.,* Fed.R.Civ.P. 26(b)(2)(C), the parties should generally presume that the Producing Party bears all costs as to reasonably accessible ESI and, provided further, the parties should generally presume that there will be cost sharing or cost shifting as to ESI that is not reasonably accessible. The parties may choose

to discuss the use of an Application Service Provider that is capable of establishing a central respository of ESI for all parties.

K. Search methodologies for retrieving or reviewing ESI such as identification of the systems to be searched; identification of systems that will not be searched; restrictions or limitations on the search; factors that limit the ability to search; the use of key word searches, with an agreement on the words or terms to be searched; using sampling to search rather than searching all of the records; limitations on the time frame of ESI to be searched; limitations on the fields or document types to be searched; limitations regarding whether back up, archival, legacy or deleted ESI is to be searched; the number of hours that must be expended by the searching party or person in conducting the search and compiling and reviewing ESI; and the amount of pre-production review that is reasonable for the Producing Party to undertake in light of the considerations set forth in Fed.R.Civ.P. 26(b)(2)(C).

L. Preliminary depositions of information systems personnel, and limits on the scope of such depositions. Counsel should specifically consider whether limitations on the scope of such depositions should be submitted to the Court with a proposed order that, if entered, would permit Counsel to instruct a witness not to answer questions beyond the scope of the limitation, pursuant to Fed.R.Civ.P. 30(d)(1).

M. The need for two-tier or staged discovery of ESI, considering whether ESI initially can be produced in a manner that is more cost-effective, while

reserving the right to request or to oppose additional more comprehensive production in a latter stage or stages. Absent agreement or good cause shown, discovery of ESI should proceed in the following sequence: 1) after receiving requests for production of ESI, the parties should search their ESI, other than that identified as not reasonably accessible without undue burden or cost, and produce responsive ESI within the parameters of Fed.R.Civ.P. 26(b)(2)(C); 2) searches of or for ESI identified as not reasonably accessible should not be conducted until the prior step has been completed; and, 3) requests for information expected to be found in or among ESI that was identified as not reasonably accessible should be narrowly focused, with a factual basis supporting each request.

N. The need for any protective orders or confidentiality orders, in conformance with the Local Rules and substantive principles governing such orders.

O. Any request for sampling or testing of ESI; the parameters of such requests; the time, manner, scope, and place limitations that will voluntarily or by Court order be placed on such processes; the persons to be involved; and the dispute resolution mechanism, if any, agreed-upon by the parties.

P. Any agreement concerning retention of an agreed-upon Court expert, retained at the cost of the parties, to assist in the resolution of technical issues presented by ESI.

As stated in open court on April 27, 2007, the parties have immediate responsibilities related to Plaintiffs' ability to obtain certain ESI from Defendant. Within seven (7) calendar days from the

date of this Order, Defendant shall produce all electronic data: (a) for each Plaintiff that Lowe's maintains in PeopleClick, PeopleSoft (including the Human Resources module, the Payroll module, and the Benefits Administration module), UniCru, GEAC, G-Drive Networks, Unix Server, Equity Edge, Callidus, and any other employment databases and software applications Lowe's has maintained on each Plaintiff; and (b) all data maintained in the same data bases on a single external applicant for a Regional or Division HR position and a single internal and external applicant for an assistant store manager position, both to be identified by Plaintiffs as soon as practicable. Defendant is ordered to maintain time sheets, accounting of costs, and other expenses incurred for restoration and production of these documents. In essence, Defendant must create a factual record to be submitted to the Court and on which the Court may be able to base a cost-shifting analysis, should the issue arise in the future.

    IT IS SO ORDERED.

Signed: May 2, 2007

Frank D. Whitney
United States District Judge